(77 South. 356)

ALABAMA POWER CO. et al. v. HAMILTON et al. (7 Div. 815.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Dec. 24, 1917.)

1. INJUNCTION ☞239—EXTENT OF LIABILITY ON BONDS.

While liability of the obligors cannot be extended beyond the precise terms of an injunction bond, it is coextensive with the terms of the bond reasonably interpreted.

2. INJUNCTION ☞239 — BONDS — CONSTRUCTION.

An injunction bond must be construed with reference to the statute in force at the time it was given in determining liability thereon.

3. INJUNCTION ☞239 — BONDS — CONSTRUCTION.

To ascertain the precise terms of an injunction bond, the court may resort to the same rules of interpretation which apply in cases of other contracts.

4. PARTIES ☞5—BENEFICIALLY INTERESTED— RIGHT TO SUE.

The party having the beneficial interest has the right to use the name of the party holding legal title in a suit to recover money or property upon indemnifying the latter against costs.

5. INJUNCTION ☞248—SUIT ON BONDS—PARTIES.

The general rule that all parties plaintiff must recover, or none can, has no application to suits on injunction bonds by obligees, for the benefit of other obligees who have not had settlement of their damages and costs sustained and accrued thereon by the dissolution of the injunction.

6. JUDGMENT ☞665—SUITS ON BONDS—RES ADJUDICATA.

That some of the named plaintiffs had recovered their damages of defendant under bond given pursuant to Code 1907, § 4517, giving the right of action to "any person" who may sustain damage by the suing out of an injunction if the same is dissolved, would be no bar to an action in the name of all plaintiffs for the use of others who had employed separate counsel in securing dissolution of the injunction.

**7. PARTIES ⬦⟿80(5)—DEMURRER—MISJOINDER.**

A· complaint is not subject to demurrer for misjoinder where the defect does not appear upon its face.

**8. INJUNCTION ⬦⟿251—SUIT ON BOND—EVIDENCE ADMISSIBLE.**

In an action on an injunction bond, it was proper to permit plaintiff to introduce the entire record and proceedings in the injunction suit, including the decree of the lower court and that of the Supreme Court dissolving the injunction.

**9. INJUNCTION ⬦⟿252(8) — SUIT ON BOND — MEASURE OF DAMAGES.**

In a suit on an injunction bond given on restraining an action at law, the measure of damages was the fair and reasonable value of the services rendered by plaintiffs' attorneys, and incurred by plaintiffs in procuring the dissolution of the injunction restraining suit.

**10. INJUNCTION ⬦⟿251—SUIT ON BOND—EVIDENCE ADMISSIBLE.**

In a suit on an injunction bond, testimony of the attorney for the obligees for whom the suit was brought as to appearance for which no recovery could be had in the instant suit was relevant for the purpose of showing that witness appeared for obligees for whom suit was brought, and that his partner, whose receipt in part satisfaction was introduced by defendants, appeared for others.

**11. INJUNCTION ⬦⟿251—SUIT ON BOND—EVIDENCE ADMISSIBLE.**

In a suit on an injunction bond for the benefit of the real obligees, evidence of payment made by the nominal obligees for the real obligees' use was competent in ascertaining the relative damages sustained by the real obligees in the defense and dissolution of the injunction.

**12. INJUNCTION ⬦⟿251—SUIT ON BOND—EVIDENCE ADMISSIBLE.**

While in a suit on an injunction bond the plaintiffs were not entitled to recover for services rendered by their attorney in the lower court in resisting the application for the injunction to restrain their equity suit, where testimony as to such services had been introduced by defendants, plaintiffs could introduce similar testimony.

**13. APPEAL AND ERROR ⬦⟿1078(1)—ASSIGNMENTS OF ERROR—INSISTENCE UPON.**

Assignments of error not insisted upon in the brief will not be considered.

Appeal from Circuit Court, Talladega County; Hugh D. Merrill, Judge.

Action by G. F. Hamilton and others against the Alabama Power Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

See, also, 195 Ala. 438, 70 South. 737.

Knox, Acker, Dixon & Stewart, of Talladega, O. R. Hood, of Gadsden, and Thomas W. Martin, of Birmingham, for appellants. Riddle & Burt, of Talladega, for appellees.

THOMAS, J. This suit was commenced in the circuit court of Talladega county, in the names of 706 plaintiffs, for the use of 289 of the named plaintiffs, to recover damages the natural and proximate result of the suing out of the injunction.

As originally filed on December 16, 1915, the complaint was in the names of "G. F. Hamilton and others," the names of the plaintiffs other than Hamilton not being stated, and was against the Alabama Power Company and the United States Fidelity & Guaranty Company as defendants. When the cause came for trial, the complaint was amended at plaintiffs' instance, by stating the names of all the plaintiffs, they being all of the defendants in the injunction suit. A recital of the names of these plaintiffs embraces ten pages of the record; many of them being minors suing by next friend. As last amended, the complaint contained one count and a copy of the injunction bond incorporated therewith as an exhibit.

Defendants' demurrers being overruled, pleas from 1 to 11, inclusive, were filed. Demurrer was sustained to all of said pleas except pleas 1 and 2 of the general issue and pleas 10 and 11 of satisfaction and discharge of plaintiffs' claim by payment. There was judgment for plaintiffs.

The bond on which the suit was brought being in statutory form, it will be necessary that we consider the construction of the statute providing for a bond payable to the party against whom an application for injunction is granted. Section 4517 of the Code of 1907. This section of the Code was framed pursuant to the amendment made by the act of February 27, 1889 (Gen. Acts 1888–89, p. 116), to section 3524 of the Code of 1886, and gave the right of action "to any person who may sustain damage by the suing out of such injunction if the same is dissolved."

Of the bond we may observe that though it was payable to G. F. Hamilton by name, yet by its terms it was payable to "the other defendants in the above-entitled cause," which cause was that of the Alabama Power Co. v. G. F. Hamilton et al.—the 706 defendants to the bill in which injunction was issued, the plaintiffs here, with about 400 others, who were the defendants named therein. By this bond the Alabama Power Company, as principal, and the United States Fidelity & Casualty Company, as surety, were—

"held and firmly bound unto the said G. F. Hamilton and the other defendants in the above-entitled cause [Alabama Power Co. v. G. F. Hamilton et al., Defendants] in the sum of $15,-000. * * * The condition of the above obligation is such that, whereas the said Alabama Power Company heretofore filed its bill of complaint in the chancery court of Talladega county, Ala., and has obtained thereon a fiat from Hon. W. W. Whiteside, chancellor of said court, for the issuance of a temporary injunction to restrain and enjoin the said G. F. Hamilton and the other defendants in said cause, their agents and attorneys, from prosecuting their suits at law described in said bill, now pending in the several courts of the state of Alabama, therein set forth, and from instituting and prosecuting other like suits against the complainant: Now, therefore, if the said Alabama Power Company, or its successors or assigns, shall pay or cause to be paid all damages and costs which any person may sustain by the suing out of such injunction, if the same be dissolved, then this obligation shall be void; otherwise it shall remain in full force and effect."

The evidence showed that the injunction had been dissolved by decree of the Supreme

---

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Court rendered upon the appeal from the decree granting the injunction (Hamilton et al. v. Alabama Power Co., 195 Ala. 438, 70 South. 737); that the 289 plaintiffs for whose use this suit was brought had employed attorneys to defend the injunction and to procure its dissolution, and had agreed to pay such attorneys a reasonable fee for their services in that behalf; that the several firms of attorneys of which D. H. Riddle was the senior member were those employed by the said 289 plaintiffs, the real parties plaintiff in interest in this suit; that each one of said real plaintiffs separately employed Riddle's firms in said suits, and that they were not interested in the said several suits of the other 400 and more plaintiffs, pending in the several courts of the state against the said Alabama Power Company; that, though the appeal from the order granting the injunction was taken to the Supreme Court in the names of G. F. Hamilton and others in the chancery suit, it is nevertheless a fact that much of the services performed in dissolving that injunction were rendered by the firms of attorneys of which D. H. Riddle was the senior member, representing the said 289 defendants in the injunction suit, the real plaintiffs here, on appeal to this court; that the suit at bar was filed on behalf of these 289 plaintiffs in the circuit court of Talladega county on the day the application for a rehearing in the Supreme Court was overruled and the injunction dissolved; and that Talladega county was where the suit was filed in chancery and the injunction secured.

The evidence showed without conflict that the defense of this injunction suit in behalf of the said 289 plaintiffs represented by Riddle's firms was conducted in person by the senior member of the firms, said D. H. Riddle.

The defendants offered in support of their pleas of payment a receipt for part payment given by J. C. Burt, a junior member of one of said Riddle's firms of attorneys. This receipt was in the following language:

"G. F. Hamilton et al., Plaintiffs, v. Alabama Power Company, Defendant. In the Circuit Court of Talladega County, Alabama. Received of the Alabama Power Company, the defendant in the above-entitled cause, the sum of nine hundred dollars ($900.00) in part on account of the damages and costs sustained and suffered by the said plaintiffs by reason of the suing out of the injunction by the said Alabama Power Company in the case of Alabama Power Company v. G. F. Hamilton et al., in the chancery court of Talladega county, Ala., which injunction was lately dissolved on the appeal taken in said cause to the Supreme Court of Alabama. This March 30, 1916. J. C. Burt, One of the Attorneys for Said Plaintiffs."

It appears without conflict, shown by the testimony of D. H. Riddle in rebuttal, that the said D. H. Riddle, senior member of the firm, or one of said firms of attorneys with Burt, "knew nothing about the receipt signed by J. C. Burt"; "did not know anything about it until yesterday when the case was called" and the trial entered upon. The defendants offered no other evidence of payment to Riddle or to his firms, or to any of the said 289 clients, plaintiff defendants, represented by him in said suits by and against the Alabama Power Company.

The evidence further shows without conflict that certain of the defendants in the injunction suit, as nominal plaintiffs in this suit for damages against the Alabama Power Company, who were represented by attorneys other than D. H. Riddle and his firms, were paid their respective damages suffered by the suing out of said injunction writ; that said defendant plaintiffs, the 289 represented by D. H. Riddle and his several partnerships, were not paid their damages sustained by the suing out of the injunction writ, except as represented by the receipt of J. C. Burt for $900. The evidence further shows that the present suit was brought in the names of all the defendants, obligees in the injunction bond, for the use, and only for the use, of each of said 289, who were also defendants in the suit in which the injunction issued, to recover on the injunction bond their respective damages incurred by the issuance of the writ of injunction.

The damages sustained, by way of reasonable attorneys' fees incurred as the natural and proximate result of the suing out of the injunction writ, and subject to recovery by any person so damaged, when the injunction was dissolved, were fixed by the several witnesses at amounts varying from $5,000 to $35,000; three witnesses, who were not of counsel in either of said causes, being of the opinion that such legal services were reasonably worth $15,000. To say the least of it, the evidence was ample to support the verdict of the jury as to the reasonable value of the services rendered by D. H. Riddle and his firms in the dissolution of the injunction.

The insistence of the defendants, in short, was that, as many of the obligees in said bond had been paid their respective damages by the Alabama Power Company, and suit was resorted to by some of the obligees or defendants to collect their respective damages, these real plaintiffs, suing in the names of all the obligees, as plaintiffs suing for their use, may not now recover. This insistence is made under the rule of the common law that such actions must follow the nature of the interest disclosed on the face of the bond or covenant, that, if it be joint, the action must be joint; if several, the action must be several. 2 Chit. Con. 1340; Add. Con. p. 56; Masterson v. Phinizy, 56 Ala. 336; Boyd v. Martin, 10 Ala. 700.

Has this rule of the common law application to the bond in question? It has been declared that it may be shown by evidence aliunde that the bond erroneously recites the names of the nominal defendants in the suit to be restrained, and also that there is pending a suit in which the person recited as defendant is the real party in interest,

though others are the nominal defendants. Person v. Thornton, 86 Ala. 308, 5 South. 470. See, also, Mitchell v. Ingram, 38 Ala. 395; Dickson v. Bachelder, 21 Ala. 699; Meredith v. Richardson, 10 Ala. 828.

In Smith et al. v. Mutual Loan & Trust Co. et al., 102 Ala. 282, 14 South. 625, the suit was brought only in the names of those damaged; and it was decided that on the breach of an injunction bond a right of action inures to "any person" who may have been damaged by the suing out of the writ of injunction, and that "the suit must be brought in the names of the payees, for the use of any person who may have been damaged."

The case of Weedon et al. v. Jones et al., 106 Ala. 336, 17 South. 454, was a suit on an attachment bond, and it was there declared that a recovery may be had for separate damages by the person damaged; that is to say, that when only one of the obligees in the bond is damaged, the suit can be maintained in the names of all the obligees for his use, "and such damage recovered as he individually sustained."

The case of Hilliard v. Brown, 103 Ala. 318, 15 South. 605, cited by counsel, was a suit on a bond for costs, given in a contest of the election of a judge of probate, and was not one on an injunction bond given under the statute.

In Marengo County v. Matkin, 144 Ala. 574, 42 South. 33, 6 Ann. Cas. 902, the court said of the plaintiff:

"It is true he is not named as an obligee in it [the injunction bond], neither was he a party to the proceeding in which the writ of injunction was issued, but the bond is conditioned * * * [quoting it, as in the bond in the instant case]. This obligation is broad enough to confer upon him a right of action for all damages resulting to him from the direct effects of the injunction."

See Sutherland on Damages, § 526.

In a suit sustained in the names of all the obligees under the bond, "for the use of L. Reeves, as the party who had been damaged by the injunction," the bond providing for the payment of all such damages and costs as any person might sustain, the difference of the condition in the bond in Washington v. Timberlake, 74 Ala. 259, was pointed out, and the rule of Smith v. Mutual Loan & Trust Co., supra, followed. In the Timberlake. Case the condition of the bond was to "pay plaintiff all such damages as he may sustain by the suing out of said injunction." Babcock v. Reeves, 149 Ala. 665, 43 South. 21.

In a still later case, where a bill was filed in equity against several defendants and an injunction secured against all, and, on appeal to the Supreme Court, the injunction was dissolved as to one of the defendants, and the suit was still pending, and the injunction not dissolved as to the other defendants, the injunction bond being conditioned as provided by the present statute (Code, § 4517), the defendant against whom the injunction had been dissolved was declared to

have the right to maintain his action on the injunction bond, to recover the damages which he had sustained on account of the injunction, and to sue in the names of all the obligees in the bond for his use; that is, though the injunction has not been dissolved as to any of the obligees in the bond except the one who sues, the one who sues may use the names of all the obligees to fix and recover the damages which such real plaintiff has sustained. Gray et al. v. S. & N. A. R. R. Co., 162 Ala. 262, 50 South. 352.

The rule of several liability declared by Mr. High is that, if the damages to the different parties against whom the injunction issued are several and distinct in their nature, the bond will be held to be a several obligation, although its language might be construed to cover merely an obligation to the defendants jointly. 2 High on Inj. § 1669. So also is the declared rule in 1 Joyce on Inj. §§ 184, 184a, 234.

[1-3] After all that may be said on the subject of liability to the obligee of such bonds, it cannot be held to be extended beyond the precise terms of the undertaking. Yet is coextensive with the terms of the bond reasonably interpreted; that is, the surety is entitled to the protection of, and to subjection to liability by, the letter of the contract. That obligation cannot be added to nor taken from by either party to the suit, nor by the court itself. Tyler Min. Co. v. Last Chance Min. Co., 90 Fed. 15, 32 C. C. A. 498. The bond given must be construed by the statute in force at the time it is given, in determining liability thereon. Krug v. Bishop, 44 Ohio St. 221, 6 N. E. 252; 1 Joyce on Inj. § 227. In endeavoring to ascertain the precise terms of the contract actually made by the parties to the bond, courts may resort to the same rules of interpretation which apply in cases of other contracts. 1 Joyce on Inj. 238; Shreffler v. Nadelhoffer, 133 Ill. 536, 552, 25 N. E. 630, 23 Am. St. Rep. 626; Levy v. Taylor, 24 Md. 282.

The condition of a bond for injunction under our statute such as that given by appellants and sued on in the instant case, is plain and unambiguous. It is "to pay all damages and costs which any person may sustain by the suing out of such injunction if the same is dissolved"; that is, that recovery may be had thereon by any person so injured, in an action brought in the names of the parties to whom payable. Smith v. Mutual Loan & Trust Co., supra; Jones v. Adler, 175 Ala. 80, 83, 56 South. 577; Babcock v. Reeves, supra; Painter v. Munn, 117 Ala. 322, 23 South. 83, 67 Am. St. Rep. 170; Miller v. Garrett, 35 Ala. 96, 100; Boyd v. Martin, supra; Gayle v. Martin, 3 Ala. 593.

[4] The principle of the cases on the subject, and which is consonant with reason and right, is that, where one party holds the legal title, and is the proper party to sue, while another has the beneficial interest in the

chose in action or property, the latter has the right to use the name of the former in a suit to recover the money or property, upon indemnifying such former party, against the cost, and the former has no right to dismiss a suit so brought. No distinction is made between cases that are tried without mention of the party for whose use the suit is brought, and those which specifically mention the use, and there is no reason why there should be any distinction. It is the right which the law protects, and if the party in whose name the suit is brought is fully indemnified against cost, no possible injury can occur to him by the conduct of the suit.

"Courts of justice sit for the purpose of securing and protecting the real interests of parties, and not for dealing with mere abstractions." Ex parte Randall, 149 Ala. 640, 42 South. 870.

In Fancher Bros. Co. v. Bibb Furnace Co., 80 Ala. 481, 484, 2 South. 268, 269, the court said, by way of explanation of the reason for the general rule:

That "when two or more unite in bringing an action, all must recover, or none can"; that, "if one has disabled himself to maintain the suit, this precludes the others from recovering, for they can only have a joint recovery"; that such "simple co-obligees" are "presumed to own each a pro rata separable interest, and to have power over the subject of contention, equal to the proportion he sustains to the whole number."

Judge Stone then observes that:

"Prima facie" the single co-obligee "can make a valid disposition of his undivided, but separable, part, without any reference to any other subjects of joint ownership between him and his co-obligees or joint owners. We say prima facie, for circumstances may exist which would vary this rule."

[5] The general rule that all parties plaintiff must recover, or none can, has no application to suits on injunction bonds by obligees, for the benefit of other obligees who have not had settlement of their damages and costs sustained and accrued thereon by the dissolution of the injunction. It is without reason to say that, if one of the obligees, by accepting payment of his damages, or otherwise, has disabled himself to maintain a suit for his personal damage sustained by the suing out of the writ of injunction, this constitutes a bar to a suit on the bond, by all the other obligees, for the use of other obligees damaged by the suing out of the writ, when the injunction has been dissolved.

Why should an estoppel or remittitur by, or a payment to, one of many obligees in an injunction bond, be given greater effect than the law attaches to such an act or attempted action by a nominal plaintiff, or by the next friend of a minor suing, or by an official suing for the benefit of a real party beneficially interested? The beneficiary, in fact and in law, is the sole party to the record. Smith v. Yearwood, 73 South. 384.[1] As protecting the rights of such beneficiary and sole party to the record, it has been held that the complaint may be amended by the adding or the striking out of the nominal plaintiff, and

that such an amendment does not constitute a change of parties to the record (Harris v. Plant & Co., 31 Ala. 639; Amer. Union Tel. Co. v. Daughtery, 89 Ala. 191, 7 South. 660; Cowan v. Campbell, 131 Ala. 211, 31 South. 429; Manistee Mill Co. v. Hobdy, 165 Ala. 411, 51 South. 871, 138 Am. St. Rep. 73); that the next friend by whom an infant sues, nor his attorney of record, has no authority to receive payment of a judgment in favor of the infant and enter satisfaction thereof (Collins v. Gillespy, 148 Ala. 558, 41 South. 930, 121 Am. St. Rep. 81; Carroll v. Draughon, 152 Ala. 418, 44 South. 553, 126 Am. St. Rep. 51), nor to dismiss or compromise the suit, or confess or consent to a judgment to the prejudice of the rights of the minor (McLaughlin v. Beyer, 181 Ala. 427, 61 South. 62; Isaacs v. Boyd, 5 Port. 388; T. C. I. & R. R. Co. v. Hayes, 97 Ala. 201, 12 South. 98; Fowlkes v. M. & C. R. Co., 38 Ala. 310); and that a guardian ad litem has not the right to control the recovery by the infant to his prejudice (Waugh v. Emerson, 79 Ala. 295, 297).

As early as Chisholm v. Newton, 1 Ala. 371, this court held that the admissions of a nominal plaintiff, made after the commencement of the suit, cannot be given in evidence to defeat the claim of the actual party in interest (P. & M. Ins. Co. v. Tunstall, 72 Ala. 142, 148; Thompson v. Drake, 32 Ala. 99, 104; Pharis v. Leachman, 20 Ala. 662, 679; Bowen v. Snell, 11 Ala. 379; Cunningham v. Carpenter, 10 Ala. 109, 112; Head v. Shaver, 9 Ala. 791, 793; Brown v. Foster, 4 Ala. 282; Graham v. Lockhart, 8 Ala. 9, 26; Copeland & Lane v. Clark, 2 Ala. 388; 1 Greenleaf, Ev. § 180, and authorities); that admissions against interest as to the soundness of a testator's mind, or that fraud or undue influence was practiced, cannot be received to invalidate a will to the prejudice of other legatees (Roberts v. Trawick, 13 Ala. 68; Eastis v. Montgomery, 93 Ala. 293, 297, 9 South. 311; Blakey v. Blakey, 33 Ala. 611, 617; Bunyard v. McElroy, 21 Ala. 311); that admissions of a trustee having no beneficial interest in the property conveyed to him may not be given evidence to defeat a deed of trust executed solely for the benefit of others (Graham v. Lockhart, supra; Thompson v. Drake, supra; Sykes v. Lewis, 17 Ala. 261; Roberts v. Trawick, supra).

It is clear from the foregoing analogous cases that the ruling in Gayle v. Martin, 3 Ala. 596, relied on by appellants, has no application to the facts at bar. Chief Justice Collier was there expounding the law of a case involving the libel and seizure of a boat subsequent to decree of condemnation or order of sale, where a third person had intervened as claimant and executed bond for the prosecution of the writ of error. In that bond the obligors acknowledged themselves firmly bound unto the plaintiffs in the desig-

---

[1] 197 Ala. 680.

nated penal sum, for the payment of which, etc., conditioned that, whereas there had been an attachment at the suit of said libelants, levied on the steamboat, which attachment was founded on the libel of said obligees and libelants, filed in the county court, etc. It was insisted that the action was improperly brought in the names of all the obligees, that the judgments were several, in favor of each, and that each should sue for himself, assigning as a breach the nonpayment of his judgment. The Chief Justice adverted to the rule of the common law as to a release by one of several joint obligees, and concluded the discussion as follows:

"We have stated these principles, that it may be seen how strict the law is in requiring all the obligees in a bond, even without reference to their interest, to join in the prosecution of a suit against the obligors. Their right to join is wholly disconnected with their right to release the cause of action, and depends exclusively upon the question whether the legal interest is in them. The undertaking is to pay all the obligees eo nomine, and this is conclusive to show to whom the obligation is given. * * * . "As the present case does not require us to consider the right of one obligee, where they are several, to release the bond, or of one plaintiff, where there are more, to discharge the action, we purposely decline expressing any opinion on these points."

It is thus apparent that the Chief Justice reserved for decision the very question now presented for determination.

[6] Defendants' pleas to which demurrers were sustained present for review the rule of res adjudicata. The fact that some of the nominal plaintiffs had recovered their damages of the Alabama Power Company is no bar to the present action. The rule that former judgments in courts of concurrent jurisdiction operate a bar to other suits was early discussed in Duchess of Kingston's case, 20 Howell's State Trials, 355, 538, 2 Smith's Leading Cases, 609 (573). The rule there announced through the Lord Chief Justice has been followed in our courts. Terrell v. Nelson, 74 South. 929.² The pleas of res adjudicata offered by defendants in bar of the second suit, to which demurrers were sustained, failed to aver that the parties and the subject-matter were the same in both suits, and that the judgment in such first case was on the merits of the case, and was the one sought to be pleaded in bar in the second case; that is to say, was conclusive between the same parties upon the same matter in question under the issues in the first case.

It is true that it has been held that on the death of one of several joint obligees on a bond the right of action vests in the survivors. Bebee v. Miller, Minor, 364; Gayle v. Martin, 3 Ala. 597; Skinner v. Bedell, 32 Ala. 44; Rupert v. Elston, 35 Ala. 79; Foster v. Chamberlain, 41 Ala. 158; Burrows v. Pickens, 129 Ala. 648, 29 South. 694; Code 1907, § 2495. The cited statute reads as follows:

² 199 Ala. 436.

"When suit is brought for the use of another, the death of the nominal plaintiff does not abate the suit, but it proceeds in the name of the beneficiary; when the beneficiary dies, it must be revived in the name of his personal representative, whether the nominal plaintiff be living or not."

Before a defect in a complaint can be raised by demurrer, it must affirmatively appear from the face of the complaint. Merritt v. Coffin, 152 Ala. 474, 44 South. 622; Manning v. Pippen, 86 Ala. 357, 5 South. 572, 11 Am. St. Rep. 46; Phillips v. Adams, 70 Ala. 373; Bromberg v. Heyer, 69 Ala. 22; Stephens' Pl. 151–153.

[7] From an inspection of the complaint, we cannot say but that Dan Vanderslice, as administrator of the estate of Voigle Vanderslice, deceased, was a plaintiff in one of the pending suits so enjoined by the chancery court in the suit in which the injunction bond was given. The real parties or obligees to the bond not being set out, and the record not disclosing a misjoinder by a proper pleading, we cannot say that the line of authority from Bebee v. Miller, supra, to Foster v. Chamberlain, supra, relied on by appellant, had application. In Masterson v. Phinizy, supra, the pleading showed the misjoinder. Here it does not. The complaint was not subject to demurrer on this ground.

It has also been declared that demurrer is not the proper remedy to expunge from such a complaint nonrecoverable damages. Such damages should be stricken on motion or controlled by a charge to the jury. Cole v. Tuck, 108 Ala. 227, 19 South. 377; Columbus, etc., Co. v. Bridges, 86 Ala. 448, 5 South. 864, 11 Am. St. Rep. 58; Copeland v. Cunningham, 63 Ala. 394; Woodstock Iron Works v. Stockdale, 143 Ala. 550, 554, 39 South. 335, 5 Ann. Cas. 578. The refusal of the court to sustain the motion to strike nonrecoverable damages will not be reversed on appeal. Marx v. Miller, 134 Ala. 347, 32 South. 765; Columbus, etc., Co. v. Bridges, supra; Goldsmith v. Picard, 27 Ala. 142.

[8] On the question of the exception as to the admission of evidence, we will say that the court did not err in permitting plaintiffs to introduce the entire record and proceedings in the case in which injunction had issued, including the decree of the lower court and that of this court dissolving the injunction. Babcock v. Reeves, supra.

[9] The measure of damages was "the fair and reasonable value of the services rendered" by the real plaintiffs' attorneys, and incurred by the plaintiffs, in procuring the dissolution of the injunction. Jesse French Piano & Organ Co. v. Porter, 134 Ala. 302, 306, 32 South. 678, 92 Am. St. Rep. 31; Bush v. Kirkbride, 131 Ala. 405, 30 South. 780; Jackson v. Millspaugh, 100 Ala. 285, 14 South. 44; Cooper v. Hames, 93 Ala. 280, 9 South. 341; Bolling v. Tate, 65 Ala. 417, 39 Am. Rep. 5; Gray v. S. & N. R. R. Co., 162

Ala. 262, 50 South. 352; Mayor, etc., v. De Vore, 169 Ala. 237, 53 South. 1018.

[10] The several assignments of error are based on the overruling of defendants' objections to questions propounded to witness Riddle. An examination of Riddle's testimony shows that he was speaking primarily of his employment by the defendants in the injunction suit—that is, by the 289 defendants above indicated—and from his evidence it appears that he and his firms appeared and conducted the defense of said injunction suit, in connection with the attorneys representing other defendants therein. When the whole evidence is considered—that of the witnesses who testified touching the reasonable value of the services rendered in procuring the dissolution of the injunction—it cannot be fairly said that witness Riddle's account of his appearance in Birmingham before the chancellor, nor his statement that he went to Anniston to resist the application for a reduction of the injunction bond, entered prejudicially into the $5,000 judgment rendered against the defendants. While the evidence questioned cannot be made the basis of recovery in this suit, still it tends to show which of the named firms of attorneys were representing the defendants in the dissolution of the injunction, and to show that while acting in Birmingham, and in Anniston, and before this court on appeal, in conjunction with other attorneys, each firm of attorneys nevertheless represented separate defendants. This testimony of Riddle's was further relevant to show that Riddle, rather than his partner, J. C. Burt, whose receipt in part satisfaction of the damages was introduced by the defendant, the Alabama Power Company, under the plea of payment, was conducting, on behalf of his firms, the defense in the interest of their said clients.

[11] The evidence of services discharged by and payments to other attorneys of the damages sustained by their respective clients, the nominal plaintiffs in the suit at bar for the real plaintiffs' use, was likewise competent in ascertaining the relative damages sustained by the real plaintiffs in the defense and the dissolution of the injunction. That such testimony was considered relevant for this purpose by the defendants is shown by their examination in chief of Judge NeSmith, had before any other testimony was offered. To this we shall advert later; that is to say, it was proper to show what was done by Riddle and his firms in preparing the appeal that resulted in the dissolution of the injunction, and in representing his clients in this court, and what he did in conjunction with the attorneys of other appellants in that behalf.

[12] The extent of the damages in questions to witness Parsons and others was limited to services rendered by Riddle's firms in appealing from the injunction and securing the dissolution of it. The witness Weil based his answer, "I would not think that a charge of $15,000 or $20,000 would be excessive, considering the amount involved in the case and the importance of the question and the result of the litigation," on his examination of the bill, the briefs, and all papers in the file, and on the testimony and evidence heard by the witness; and this was his judgment of the reasonable value of the services of the attorneys representing these 289 plaintiffs in securing the dissolution of the injunction.

The questions to and answers of the witness Manning were rather general in reference to the basis for the amount fixed as the reasonable value of the services rendered by the attorneys in the chancery suit; yet on cross-examination the witness explained the basis of his opinion as to the reasonable value of the legal services in question in a way to leave the jury under no misapprehension as to the weight to be attached to his testimony.

It must not be overlooked, in a consideration of this testimony, that for the convenience of the defendants, Judge NeSmith was introduced by them prior to the introduction of the testimony of the plaintiffs, and that in his examination in chief the defense of the equity suit before the chancellor was inquired into, which defense embraced the application for the injunction and the argument thereon, the representing of parties defendant by counsel other than Riddle and his firms or witness (NeSmith) and his firms, as well as services in the fixing of the bond, in the preparing of the appeal, and in the prosecution of the appeal in the Supreme Court; witness stating that this work was done "principally" by Riddle and by witness. Judge NeSmith further testified, at the instance of the defendants, that:

"For the services rendered by Mr. Riddle's firms in representing the clients he represents I think $2,500 would be a reasonable fee for the dissolution of the injunction, including the services on the application for rehearing and in the Supreme Court."

On Judge NeSmith's testimony, the testimony of the plaintiffs was relevant.

. According to the testimony of Mr. Willett, a witness for the defendants, given in response to defendants' questions:

"The way fees are usually charged in this locality, for the services of all the attorneys representing the respondents and dissolving this injunction $5,000 would be a liberal fee, though not an unreasonable one."

On cross-examination the witness further explained the basis for his opinion of the reasonable value of the services in the particular in hand, and, to prevent any misunderstanding of his testimony, concluded the whole matter with the statement that:

"The attorneys' fees for dissolving an injunction and seeking to enjoin suits of $2,900,000 is what I am considering."

Messrs. Stallings and Acuff, as witnesses for defendants, detailed their respective em-

ployment by the defendants in said cause, and told of their attendance at the hearings in Birmingham and Anniston, of Riddle's appearance there, and of their conferences with him, Acuff saying:

"After the case was called I called up at Birmingham Mr. Stallings' office, and also met Mr. Ellis, of Riddle & Ellis, and they insisted that I go on and try the case and they would look after the injunction part of the suit," etc.

Mr. Stallings explained that he consulted about the case with Mr. Riddle, and stated that:

"Our idea representing the respondents is to be fair with the court, but if the court or chancellor had leaned against us not to disturb it. Mr. Riddle agreed not to disturb it, and we agreed that, if he inclined to issue the injunction, it would be all right, so that we could get them to make the bond"

—thus clearly showing the separate, independent, representation of his clients, defendants in the injunction suit, by Mr. Stallings, and the same by Mr. Riddle, before the bond was made. This testimony, under the issues and the evidence in this case, tended to show the nature of their respective services performed in the securing of the dissolution of the injunction. Moreover, defendants allowed Mr. Stallings to answer for them, touching the rule as to attorney's fees:

"I would think that $5,000 would be a reasonable fee. Mr. Riddle's part for representing 289 defendants and for the work he did would be about 40 per cent. of this $5,000."

When the evidence was closed, the jury were fully informed that no insistence was made for damages for services rendered by attorneys at Anniston on the motion for a reduction of the bond. Moreover, this testimony as to the services performed in the lower court was admitted only after such evidence was brought out, in the first instance, by defendants, the court suggesting that:

"What took place in Birmingham was admitted on account of what Judge NeSmith testified yesterday, and inasmuch as they [the defendants] went into it, it would be proper for the plaintiffs to testify as to what happened."

The motion of defendants' counsel to exclude was too general, "to exclude all the testimony on the value of fees," to reach any illegal testimony, if such there was, introduced on the question of reasonable counsel fees. Then, too, the jury were fully and properly instructed by the court as to the measure of damages in such cases, and as to the value of legal services, reasonable attorneys' fees, recoverable by plaintiffs upon the dissolution of an injunction. All other evidence was clearly excluded from the jury by the trial court, as follows:

"Now, in this case the plaintiffs are entitled to recover such damages as they may have sustained by reason of the issuance of that injunction, and the damages which they claim resulted to them from the issuance of the writ of injunction are reasonable fees in and about having the injunction dissolved. Now, there is no other question in this case, except the question of the attorneys' fees, which the plaintiffs claim they are entitled to recover on account of the breach of this bond. No other damages are claimed, and of course it would not be proper for you to award damages for any other purpose than for the paying of the plaintiffs' reasonable attorneys' fee for the services of plaintiffs' attorneys, that is, these 289 plaintiffs, in having the writ of injunction dissolved. Now, in this case there was some testimony as to the services rendered by the plaintiffs' attorneys at Birmingham upon the hearing before the chancellor as to whether or not he would grant the writ of injunction. There is also testimony as to the services rendered by the plaintiffs' attorneys in Anniston at the hearing before the chancellor as to the amount of the injunction bond. The plaintiffs in this case are not entitled to recover for the services of their attorneys on the hearings at Birmingham, nor are they entitled to recover for the services of their attorneys at Anniston in an effort to prevent the reduction of the injunction bond."

There was no error committed in the introduction of other evidence, and further discussion of the evidence is unnecessary.

[13] Assignments of error from 57 to 64, inclusive, were based on defendants' refused charges. They seem not to be insisted on by appellants' counsel in their careful brief. We deem it unnecessary to consider these. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 South. 158.

No error having intervened in the trial of the cause, the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.